**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

MICHAEL ANDRE TODD,                    No.  C 03-3995 SBA

            Plaintiff,                  **ORDER**

    v.                                  [Docket No. 156]

A. LAMARQUE, (ROGELIO C. GARCIA),
*et al.*,

            Defendants.

_____

Before the Court is defendant Rogelio C. Garcia's second motion for summary judgment/alternative motion for partial summary judgment [Docket No. 156]. For the reasons that follow, the motion is DENIED.

**BACKGROUND**

Plaintiff Michael Andre Todd brings this action under 42 U.S.C. § 1983, alleging excessive force was used against him by defendant Garcia in an altercation on January 29, 2002. At the time, Todd was an inmate at the Salinas Valley State Prison. Defendant Garcia was a correctional officer at the institution. Todd contends that Garcia used excessive physical force against him, causing him to become unconscious and suffer a seizure.

The following are the facts viewed in the light most favorable to Todd, the non-movant.

**1.      The January 29, 2002 Altercation**

Shortly before the incident involving Todd and Garcia, there was an unrelated altercation between two inmates and a correctional officer in Building A-1 of the prison. This triggered a "recall of the yard," a general order for all inmates to return to their cells. Defendant Garcia states that during this recall he conducted a contraband search of magazines held by Ronell Draper, the person with whom Todd shared cell 214. *See* Docket No. 158, Ex. O, at 72. Apparently upset over Garcia's treatment of his cellmate, or that Garcia prevented Draper from bringing back magazines, Todd made a remark to

Garcia.

Garcia responded by "run[ning] up the stairs in an aggressive manner towards Plaintiff['s] assigned cell." Docket No. 174, Ex. 14 (Compl. at ¶ 12). Garcia allegedly "expressed a series of disrespectful and profane comments towards Plaintiff" and "challenged Plaintiff to do something about it." *Id*. at ¶ 13. Todd states that instead of responding to Garcia, he decided to sit down on his assigned bunk and ignore Garcia. Todd maintains that he was in his cell during this time, and that Garcia requested the cell door to be re-opened. *See id*., Ex. 13, at 88-89. Inmates Allen Anthony Fulton, Jr. and Thomas Taylor corroborate Todd's allegation that his cell door was closed or closing as Garcia ran up the stairs calling for the control booth to re-open Todd's cell door. Fulton Decl. ¶¶ 5-6; Taylor Decl. ¶ 7. The declarations and deposition testimony of six other inmates suggests that it was Garcia that escalated the situation by physically confronting Todd. *See generally* Docket No. 174.

Garcia then ordered Todd to step out of the cell and face the wall. Docket No. 174, Ex. 14 (Compl. ¶ 13); Ex. 13, at 89-90. In Garcia's deposition, the defendant acknowledges that Todd "did comply to my orders [to step outside of his cell, face the wall, and place his hand on the wall]." Docket No. 158, Ex. O, at 91. Garcia grabbed Todd's wrist, applying an "extreme amount of pressure," and shoved Todd's head into the wall and cell door. Compl. ¶ 14; *see also* Docket No. 174, Ex. 13, at 92.

Garcia attempted to place Todd in handcuffs. Garcia testified that he had one of Todd's hands, but was unable to handcuff the other. *See* Docket No. 158, Ex. O, at 103. Plaintiff Todd is a physically large man, and several eyewitnesses report Todd stating something to the effect that because of his size, he needed two sets of handcuffs to be able to put his hands behind his back. Medical records reflect that Todd was obese at the time of the incident. *See* Docket No. 157, Ex. D (describing Todd as morbidly obese).

Todd then began to "lo[se] his balance and was caused to fall and hit his head on the metal . . . lock on the cell door, which knocked Plaintiff unconscious." Compl. ¶¶ 14-15. Todd testified that "I hit my head on the door on like the food port, and I was knocked unconscious." Docket No. 174, Ex. 13, at 95.

2

At this point, Todd had a seizure. *See* Docket No. 174, Ex. 14 (Compl. at ¶ 15). Todd states that while he was on the ground unconscious, Garcia, and Officers Fernando O. Chavez and P. Lord, "began striking Plaintiff with closed fists and batons." *Id.* ¶ 17. Fulton, Little, Draper, and Phillips observed the officers kicking and punching Todd as he lay on the floor. *See* Docket No. 174, Ex. 6, at 67; Docket No. 158, Ex. N, at 57-60; Ex. M, at 64-66; Ex. L, at 48.

Defendant Garcia did not recall Todd hitting or punching either him or any other officer that morning. *See* Docket No. 158, Ex. O, at 103. Officer Chavez testified that he did not see Todd throw any punches. *See* Docket No. 174, Ex. 4, at 83. Chavez did testify that he was hit in the groin, although he did not see by whom. *Id.* at 84. According to Todd, Garcia threw the punch that hit Chavez in the groin area. Docket No. 174, Ex. 13, at 96.

Inmates Fulton and Taylor corroborate Todd's account of Garcia's use of force on him while he was unconscious. Fulton states the following version of events in his declaration:

> Mr. Todd looked as if he lost his balance as these three officers Garcia, Chavez, and Lord forced Mr. Todd down, all of them punching Mr. Todd and each other, Mr. Todd's head hit the cell door and floor as if Mr. Todd was unconscious.

> Michael A. Todd's body started shaking and jerking . . . Mr. Todd's hands at this time were still not cuffed, and the officers started yelling stop resisting; Mr. Todd appeared uncoherent [sic], and unconscious. . . .

> Several inmates . . . began kicking their cell doors yelling to the officers to let Mr. Todd go because they were going to kill him if they did not, but the officers continued.

Docket No. 174, Ex. 7 (Fulton Decl. ¶¶ 8-10).

Taylor states that after Todd landed on the ground, Garcia, Chavez, and Lord "continued to beat and choke Mr. Todd until he was no longer moving, Mr. Todd looked as if he was dead; and from the way he was being beat [Taylor] began hoping that these officer's [sic] did not kill Mr. Todd." Docket No. 174, Ex. 12 (Taylor Decl. ¶ 10).

In addition to Fulton and Taylor, four other eyewitnesses have offered declarations and/or deposition testimony corroborating Todd's version of events. *See* Docket No. 174, Ex. 5 (Dep. of Ronell Draper); Ex. 6 (Dep. of Allen Anthony Fulton, Jr.); Ex. 7 (Decl. of Allen Anthony Fulton, Jr.);

Docket No. 158, Ex. K (Dep. of Joe Eskridge); Ex. L (Dep. of Athan Phillips); Ex. N (Dep. of Charles Little).

After being taken to the ground, Todd was non-responsive. He was given an ammonia inhalant to revive him. *See* Docket No. 174, Ex. 4, at 22. Todd was then taken by ambulance to a hospital. At the hospital, an "Emergency Care Flow Sheet" was filled out, reflecting evidence of trauma to Todd's neck and back. *See* Docket No. 157, Ex. E. Other medical records reflect that Todd complained of neck and back pain.

As a result of the incident on January 29, 2002, Todd suffered injuries to his head, neck, shoulder, back, and knee. Todd maintains that he also suffers neurological and psychological impairments as a result of the use of force to the present day.

### 2. The Grievance Process and the Finding that Garcia Committed Misconduct

Todd filed an internal grievance with the prison, what is referred to as a "602 appeal," related to the January 29, 2002 incident. In his 602 appeal, Todd recited his version of the incident and his claims that Garcia used excessive force against him. *See* Docket No. 26, Ex. B. Todd requested that "Officer R.C. Garcia . . . be terminated from his job or seek counseling and or anger management classes." *Id*. at 16. At the first level of review, Todd's complaint was partially granted, and the decision indicated that Garcia committed misconduct. Todd was informed by the investigating Sergeant that "corrective action had been taken." *Id.* at 2. The record does not show what "corrective action" was taken against Garcia. However, the defendants' prior briefing in support of their motion for summary judgment indicated that Garcia is no longer a correctional officer at Salinas Valley State Prison. The Sergeant wrote that Todd was "satisfied with the outcome and request[ed] that no further action be taken." *Id.* Todd responded and indicated that he was not satisfied with the outcome of the first level review; therefore, he proceeded to succeeding levels of review. *Id.*

Todd's appeal was partially granted at the second level. *See* Docket No. 26 ("Second Level Appeal Response" of June 13, 2002, at 3). Chief Deputy Warden Caden wrote, "In the event that staff

misconduct is substantiated, the institution would take the appropriate course of action. In this case, the complaint was substantiated." *Id.*

However, Todd's appeal was denied at the Director's Level because, as Todd was informed, he supported his allegations of staff misconduct at the second level, and "[i]nstitution staff determined that the allegations of staff misconduct were sustained." *See* Docket No. 174, Ex. 25. According to the Chief of the Inmate Appeals Branch, "As misconduct was substantiated, the institution will have taken the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of the general public or the inmate population, and will not be released to [Todd]." *Id.*

In other words, the internal review procedures for investing staff misconduct at Salinas Valley prison found that Garcia committed misconduct and that corrective action was taken against him. The Department of Corrections, however, would not state what this purported corrective action was, labeling it a private and confidential personnel matter. Todd appealed, but his appeal was denied based on this circular reasoning: (1) his allegations were substantiated; (2) if a complaint is substantiated, then appropriate action would have been taken; (3) since appropriate action would have been taken, no further action was required, and thus, no remedy was necessary or available.

### 3. The Prosecution of Todd for Resisting Arrest and Battery of a Peace Officer

The District Attorney of Monterey County filed a complaint against Todd on May 15, 2002, and later, a largely similar information, on July 23, 2002, based on the foregoing events. *See* Docket No. 158, Exs. A, B. These charged Todd with two counts of felony battery by a prisoner, in violation of section 4501.5 of the California Penal Code. *See id.* The first count alleged Todd committed battery against Chavez; the second, battery against Garcia.

A preliminary hearing was held before the Honorable Robert F. Moody of the Monterey Superior Court on July 19, 2002. *See* Docket No. 158, Ex. G. After hearing testimony from Garcia and Chavez, the court declared: "It appears from the proof that the offenses named in the complaint have been committed by the defendant. I'll order the matter bound over for trial around . . . the 30th of July 9:00

a.m." Docket No. 158, Ex. G, at 34.

On September 8, 2003, a change of plea hearing was held before Judge Moody.  *See* Docket No. 158, Ex. E.  Todd represented himself, although it may be noted that he requested both a competency hearing and an attorney.  *Id*. at 2.  The court denied these requests, apparently because Todd had been previously informed that the matter was set for trial that day, and because Todd had previously decided to represent himself.

The court, on its own motion, added two counts of resisting, obstructing, or delaying a peace officer in violation of California Penal Code section 148.  *Id*. at 6-7.  No explanation for this is included in the record.  At the hearing, Todd pled no contest to count one, the charge of felony battery against Chavez.  *Id*. at 7.  Count two, the charge of battery against Garcia was dismissed.  *Id*. at 8.  Todd pled no contest to the two newly added counts of misdemeanor resisting arrest as part of the plea bargain. *Id*.

A sentencing hearing was conducted on September 16, 2003.  *See* Docket No. 174, Ex. 21.  At the sentencing hearing, the Deputy District Attorney proclaimed his disagreement with the court taking pleas from Todd for resisting arrest.  The Deputy District Attorney stated for the record that:

> I understand the Court at the hearing also took pleas from him on 148s because they believed that there was a 148 offense in each one of these.  We disagree with that. The 148s may be a lesser-related offense, but they are not lesser-included offenses based on my research of the law.
> They certainly have the smackings of a 148 because you have officers -- in this particular case, Mr. Todd was resisting the officers who were trying to get him back into his cell.

Docket No. 174, Ex. 21, at 5.

It appears from a full review of the transcript of the hearing, although it is not certain, that the court agreed with the Deputy District Attorney.  The court went on to sentence Todd for battery, but made no further mention of the resisting arrest charges, and did not sentence Todd for resisting arrest. *See* Docket No. 174, Ex. 21, at 8-9.  A September 19, 2003 minute order reflects that Todd was sentenced to three years for the battery.  *See* Docket No. 158, Ex. F.  While it also reflects that Todd pled no contest to the two resisting arrest charges, no judgment or sentence was imposed for these

6

misdemeanor charges. *See id.* The abstract of judgment indicates that Todd was convicted of battery by a prisoner, but shows no other conviction. *See* Docket No. 174, Ex. 19. Thus, Todd pled no contest to two resisting charges brought by the court on its own motion for the first time at the plea hearing (charges that were not included in any information, complaint, or other accusatory pleading), but no judgment or sentence was imposed, and a review of the transcript suggests the charges were dropped when their propriety was questioned by the prosecuting attorney.

### 4. Procedural History

On September 2, 2003, Todd filed a complaint in this Court against Salinas Valley State Prison Officers R.C. Garcia, F.O. Chavez, P. Lord, Warden A. Lamarque, and Dr. M.O. Haffner alleging that they violated his Eighth Amendment rights. *See* Docket No. 1; Docket No. 174, Ex. 14 (Compl.). The only defendant remaining in this action is Garcia.

Defendant Garcia previously file a summary judgment motion, which was denied on October 25, 2006. *See* Docket Nos. 45, 57. In the prior motion, Garcia claimed there was no violation of Todd's Eighth Amendment rights because the force he used against Todd was minimal and necessary to maintain institutional safety, and, alternatively, that the claim was barred because he enjoyed qualified immunity from liability for the acts alleged in the complaint. Garcia maintains that since the first summary judgment motion, "further factual development shows that Plaintiff's sole remaining claim lacks merit." Docket No. 178, at 2.

The only real factual development since the first summary judgment motion is that there are now four additional eyewitnesses corroborating Todd's version of events. And it must be further noted that Garcia's renewed motion for summary judgment is blighted by his "Statement of Undisputed Material Facts." *See* Docket No. 156, 5-8. These purported "undisputed material facts" include the following: "When Officer Garcia and inmate Draper approached the cell shared by Todd and Draper, Todd blocked the entrance to the cell and questioned Officer Garcia's actions;" "Officer Garcia instructed Todd several times to step back into his cell. Todd refused;" "When Officer Garcia attempted to place Todd

in handcuffs, Todd punctured Officer Garcia's hand with his fingernails and resisted arrest;" and "When Officer Chavez assisted Officer Garcia in the arrest, Todd kicked Officer Chavez in the groin." Docket No. 156, at 5-6. The characterization of these facts as undisputed is a misrepresentation. Each of these "undisputed facts" are disputed by the deposition testimony and declarations of Todd and numerous other eyewitnesses.

**LEGAL STANDARDS**

**1. Eighth Amendment Excessive Force Claim**

Todd's remaining claim is one for damages against Garcia under 42 U.S.C. § 1983, for using excessive force and therefore violating the Eighth Amendment. Title 42 U.S.C. § 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law. . . ."

The Court set forth the legal standards for an excessive force claim in violation of the Eighth Amendment in its previous summary judgment order:

> The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be objectively, sufficiently serious, Farmer v. Brennan, 511 U.S. 824, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official must possess a sufficiently culpable state of mind, i.e., the offending conduct was wanton, id. (citing Wilson, 501 U.S. at 297); LeMaire v. Maass, 12 F.3d 1444, 1451 (9th Cir. 1993).
>
> What is required to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. Whitley, 475 U.S. at 320. Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the extent of any injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503

U.S. at 7.

        While the extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment inquiry. Id. Whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation is contextual and responsive to contemporary standards of decency. Id. at 8 (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). Such standards are always violated when prison officials maliciously and sadistically use force to cause harm, whether or not significant injury is evident. Id.; see also Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (no lasting injury required for sexual assault because sexual assault was deeply offensive to human dignity); Felix v. McCarthy, 939 F.2d 699, 701-02 (9th Cir. 1991) (it is not degree of injury which makes out violation of Eighth Amendment but use of official force or authority that is intentional, unjustified, brutal and offensive to human dignity). That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force. Hudson, 503 U.S. at 9-10 (blows directed at inmate which caused bruises, swelling, loosened teeth and cracked dental plate were not de minimis).

Docket No. 57, at 11-13.


## 2.      Summary Judgment

        Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

        In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the

non-moving party.  *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

ANALYSIS

Defendant Garcia maintains there are four grounds warranting summary judgment in his favor. Each will be addressed in turn.

**1.**     *Heck v. Humphrey*

Garcia's first argument is that this action, or at least that portion of this action based upon Garcia's use of excessive force *before* Todd became unconscious, is barred by *Heck v. Humphrey*, 514 U.S. 477 (1994).  Defendant Garcia claims that because Todd was convicted of resisting and battering a peace officer as a result of the same incident that forms the basis of his present excessive force claim, allowing this action to go forward would undermine the validity of Todd's convictions.  "Therefore, all claims by Todd before he purportedly lost consciousness must be dismissed under *Heck* or, at minimum, [Todd must] be precluded from raising them at trial."  Docket No. 156, at 9.

> In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that:
> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

(emphasis in original; footnotes omitted).

Stated more succinctly, *Heck* bars section 1983 suits "based on theories that 'necessarily imply the invalidity of [the plaintiff's] conviction[s] or sentence[s].'"  *Cunningham v. Gates*, 312 F.3d 1148,

10

1153 (9th Cir. 2002) (citation omitted).  On the other hand, the Ninth Circuit has clarified that "a § 1983 action is not barred under *Heck* unless it is clear from the record that its successful prosecution would *necessarily* imply or demonstrate that the plaintiff's earlier conviction was invalid."  *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc) (emphasis in original).

### a.    Todd's Misdemeanor "Conviction" for Resisting a Peace Officer

This first premise of the argument is that Todd was convicted of resisting a peace officer, a misdemeanor.  This premise is suspect under any circumstance, and especially so when the summary judgment evidence is viewed in a light favorable to Todd.  Whether one parses the meaning of the term "conviction" under California law, or looks to the circumstances of Todd's change of plea and sentencing hearings, it is not at all clear that Todd was in fact convicted of resisting.  Although Todd did plead no contest to two counts of misdemeanor resisting, which has the same effect as a guilty plea under California law,[1] there was no judgment or sentence imposed for resisting arrest.

At the September 8, 2003 change of plea hearing, the court, on its own motion, added two counts of misdemeanor resisting.  *See* Docket No. 158, Ex. E, at 6-7.  Todd, acting *pro se*, did not challenge these newly added counts, and pled no contest to them.  *Id*. at 8.  At the September 16, 2003 sentencing hearing, the Deputy District Attorney, *i.e.*, the prosecutor, voiced his objection to the court's action of taking pleas from Todd for resisting arrest.  The court went on to sentence Todd for battery, but made no further mention of the resisting arrest charges, and did not sentence Todd for resisting arrest.  *See* Docket No. 174, Ex. 21, at 8-9.  One reasonable inference, especially viewing the record favorably to Todd, is that the judge agreed with the prosecutor's objection and dropped the charges.

Garcia repeatedly emphasizes, though, that a plea of no contest is the equivalent of a plea of guilty, and that there is authority suggesting that a guilty plea, without or without a judgment, is a conviction under California law.  But this begs the question of whether a plea of no contest to a charge brought by a court on its own motion, with no prior accusatory pleading, is legally valid.  Intuitively at

---

[1]    "[F]or purposes of the *Heck* analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or jury verdict of guilty." *Nuno v. County of San Bernardino*, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999).

least, it seems inconsistent with basic separation of powers principles that a judge could bring criminal charges and then accept a plea on those charges. In any event, Garcia does not address this point, and the Court does not find it appropriate to resolve this unbriefed and unusual issue against the non-movant in a summary judgment motion.

At the very least, it is an open question whether Todd was convicted withing the meaning of California law. Garcia is correct that there is authority that a plea of no contest or a plea of guilty, with or without a judgment or sentence, is a conviction under California law. *See, e.g.*, *People v. Castello*, 65 Cal. App. 4th 1242, 1253 (1998) ("The ordinary legal meaning of 'conviction' is a verdict of guilty or the confession of the defendant in open court, and not the sentence or judgment"); *People v. Aguilar*, 112 Cal. App. 4th 111, 114 (2003) (noting the general principle that a plea of guilty itself constitutes a conviction, and that a plea of nolo contendere is its equivalent).

On the other hand, there is also authority suggesting that defining a "conviction" so simply is not warranted. As stated by the court in *People v. Mendoza*, 106 Cal. App. 4th 1030, 1133 (2003), "[t]he term 'convicted' has no uniform or unambiguous meaning in California. It sometimes refers to a verdict or guilty plea, and other times it means a verdict or guilty plea and the judgment pronounced on the verdict or plea" (citation omitted). The court also added that "when a civil disability is a consequence of a conviction, the term generally includes the guilty verdict *and* the judgment . . . ." *Id.* (emphasis in original). Another California court also recognized that "the term 'conviction' has no fixed definition and has been interpreted by the courts of this state to have various meanings, depending upon the context in which the word is used." *People v. Rhoads*, 221 Cal. App. 3d 56, 60 (1990).

Further, some authority suggests that a "conviction" includes a judgment or sentence. *See, e.g., Egar v. Superior Court*, 120 Cal. App. 4th 1306, 1309 (2004) ("A conviction generally means the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged") (citations omitted); *In re Ringnalda*, 48 F. Supp. 975, 977 (S.D. Cal. 1943) ("the general view, which obtains also in federal courts, that when we speak of a 'conviction' from which disabilities flow, we refer to a conviction followed by the imposition of a sentence, which is the judgment in a criminal case").

12

In addition to the open question of whether Todd was "convicted," is that a plea of no contest to a misdemeanor is not a factual admission. As set forth by California Penal Code section 1016(3):

> The legal effect of such a plea [of nolo contendere], to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes. In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit base upon or growing out of the act upon which the criminal prosecution is based.

The Ninth Circuit has also noted that "a plea of nolo contendere . . . is, first and foremost, not an admission of factual guilt. It merely allows the defendant so pleading to waive a trial and to authorize the court to treat him as if he were guilty." *United States v. Nguyen*, 465 F.3d 1128, 1130 (9th Cir. 2006) (citing *North Carolina v. Alford*, 400 U.S. 25, 36 (1970)).

Accordingly, while determining whether someone has suffered a "conviction" would seem readily resolvable as a matter of law, it is not under the unique circumstances of this case. And, as a factual matter, it is doubtful that Todd was "convicted" of resisting a peace officer.

As a final point, assuming *arguendo* that Todd was convicted of resisting, it is not clear from the record that the successful prosecution of Todd's excessive force claim would necessarily imply or demonstrate that his earlier "convictions" for resisting a peace officer were invalid. *Cf. Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc). The facts viewed favorably to Todd are that *before* Todd allegedly resisted Garcia, Garcia applied extreme pressure to his wrists while attempting to handcuff him and shoved Todd's head against the wall. Garcia's position ignores the temporal sequence with which the events could have happened: Todd resisted arrest and Garcia used excessive before and after the alleged resistance.

At least three times the Ninth Circuit has held that a conviction for resisting, delaying, or obstructing a peace office does not necessarily preclude a section 1983 action for excessive force. *See Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (en banc); *Sanford v. Motts*, 258 F.3d 1117, 1119-20 (9th Cir. 2001); *Smithart v. Towery*, 79 F.3d 951, 952-53 (9th Cir. 1996). In *Smith*, the Ninth Circuit noted that a conviction for resisting arrest may be lawfully obtained only if the officers do not use excessive force in the course of making the arrest. *Smith*, 394 F.3d at 695-96. On the other hand,

if an officer uses excessive force before the arrest, or after the arrest, an excessive force claim may properly be the subject of a section 1983 action notwithstanding the defendant's conviction on a charge of resisting an arrest that was itself lawfully executed. *Id*. at. 696. Similarly, in *Sanford v. Motts*, 258 F.3d 1117, 1119-20 (9th Cir. 2001), the Ninth Circuit held that a successful section 1983 suit based on excessive force would not necessarily imply the invalidity of a conviction for resisting arrest because the officer's use of excessive force occurred subsequent to the conduct for which the plaintiff was convicted. Other circuits have also held that *Heck* does not bar section 1983 actions alleging excessive force despite the plaintiff's conviction for resisting arrest. *See, e.g., Robinson v. Doe*, 272 F.3d 921, 923 (7th Cir. 2001) (holding that a finding of excessive force in a section 1983 action would not necessarily imply the invalidity of the plaintiff's conviction for resisting arrest); *Willingham v. Loughnan*, 261 F.3d 1178, 1183 (11th Cir. 2001), *cert. granted and judgment vacated on other grounds*, 537 U.S. 801 (2002) (same); *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 n.2 (10th Cir. 1999) (same); *Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997) (same).

Thus, even assuming for the sake of argument that Todd was convicted of resisting arrest, his section 1983 claim would not necessarily imply the invalidity of the convictions, especially given that the facts may reasonably be interpreted that Garcia used excessive force before Todd resisted. And Garcia specifically not does maintain that *Heck* is any bar to the excessive force claim for the alleged beating of Todd that occurred after Todd lost consciousness. Therefore, Todd's purported "convictions" for misdemeanor resisting are not a bar under *Heck* for his proceeding with his excessive force claim against Garcia.

### b. Felony Battery Conviction

Defendant Garcia also argues that Todd's conviction for felony battery against officer Chavez bars Todd's action excessive force claim against him. Garcia declares that "if Todd were to prevail on the issued of excessive force [against Garcia], it necessary would imply the invalidity of Todd's conviction for battery on Officer Chavez." Docket No. 156, at 11-12. Put another way, "a determination that Officer Garcia used excessive force on Todd while he was conscious would imply

that Todd's battery conviction was invalid because it depended upon a determination that Officer Garcia was engaged in the lawful performance of his duties in aiding Officer Chavez when Todd committed the battery."  Docket No. 156, at 12.

Todd correctly argues that a "jury may find that Todd committed 'battery' on Chavez, *and that Garcia used excessive force before or after that point.*"  Docket No. 173, at 8 (emphasis in original). Garcia again fails to recognize the sequence of the events, collapsing them all into one.  Before Chavez even arrived that the scene, the facts viewed favorably to Todd suggest that Garcia used an extreme amount of pressure to Todd's wrists in an attempt to force Todd into a single set of handcuffs, when his girth required at least two, and shoved Todd's head into the wall and cell door.  The battery conviction against Chavez appears to be premised on the factual allegation that while Todd was on the floor (and after Garcia used excessive force against him), Todd struck Chavez in the groin.  Therefore, the record does not clearly establish that a successful claim by Todd that Garcia used excessive force would not necessarily imply or demonstrate that Todd's conviction of battery on Chavez is invalid.  Viewed in the proper order, Todd's battery upon Chavez in no way undermines Todd's claim of excessive force against Garcia.  It should also be noted that Chavez makes no claim at this time that Todd struck him in the groin.  Chavez testified that he did not see who it was that actually struck him.  Todd has testified that it was actually Garcia that hit Chavez.  Thus, even the apparent factual predicate of the battery claim is not certain.

Finally, as will be discussed below, it is not certain what the factual basis was for the plea of no contest to battery upon Chavez.  The lack of a clear factual basis for the plea also means that Todd's lawsuit does not necessarily imply the invalidity of the battery conviction.  *Cf. Smith v. City of Hemet*, 394 F.3d 689, 698-99 (9th Cir. 2005) (en banc); *Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001). Therefore, neither Todd's purported conviction for resisting nor his conviction for battery upon Chavez preclude his section 1983 suit against Garcia.

**2.     Issue Preclusion Based on the Felony Battery Finding**

Garcia next argues that summary judgment in his favor is proper because of collateral estoppel or issue preclusion. Collateral estoppel, or "issue preclusion," refers to the common-law doctrine that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see also United States v. Arnett*, 327 F.3d 845, 848 (9th Cir. 2003).

The defendant contends that Todd's excessive force claim for events taking place up to the point of Todd losing consciousness is precluded by the findings at the preliminary hearing in the criminal case that there was probable cause that Todd committed battery.

Garcia maintains that

> Under the same rationale in *McCutchen* [*v. City of Montclair*, 73 Cal. App. 4th 1138 (1999)] and *Haupt* [*v. Dillard*, 17 F.3d 285 (9th Cir. 1994)], Judge Moody's findings at the preliminary hearing preclude Todd's claim of excessive force here because Officer Garcia was justified and permitted by law to use reasonable force in response to a combative and resistive inmate to effect an arrest.
>
> . . . .
>
> Thus, the issues necessarily determined at Todd's preliminary hearing are the same issues that underscore his civil-rights claim here of unlawful use of force while he was conscious in violation of the Eighth Amendment. Therefore, the doctrine of collateral estoppel precludes Todd from pursuing this action in a manner inconsistent with the findings at the preliminary hearing.

Docket No. 156, at 15.

The "findings" of the court at the July 19, 2002 preliminary hearing consists of this sentence: "It appears from the proof that the offenses named in the complaint have been committed by the defendant." Docket No. 158, Ex. G, at 34. In other words, the court found that there was probable cause to hold Todd over for trial on two counts of battery by a prisoner in violation of California Penal Code section 4501.5. *See* Docket No. 158, Ex. A. The charges do not specify any particular conduct; they merely state that Todd "did willfully and unlawfully, being confined in a state prison, commit a battery upon CORRECTIONAL OFFICER CHAVEZ [and Garcia]." Docket No. 158, Ex. A. The only issue litigated at the preliminary hearing was that the existence of probable cause to believe that Todd committed battery.

16

Despite this, Garcia claims that the "probable-cause determination implicitly found that Todd did not act in self-defense or defense of another" and that "Officer Garcia was justified in using reasonable force to subdue Todd," which are "the same issues that underscore his civil-rights claim here of unlawful use of force while he was conscious." Docket No. 156, at 15.

The doctrine of collateral estoppel can be invoked against a section 1983 claimant to bar relitigation of issues decided against him in a state criminal trial. *See Allen v. McCurry*, 449 U.S. 90, 103-04 (1980); *Ayers v. City of Richmond*, 895 F.2d 1267, 1271-72 (9th Cir. 1990). Under California law,[2] the five threshold requirements that must be established for collateral estoppel to bar relitigation of an issue are: (1) the issued to be precluded must be identical to that decided in the prior proceeding; (2) the issue must have been actually litigated at that time; (3) the issue must have been necessarily decided; (4) the decision in the prior proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be in privity with the party to the former proceeding. *See People v. Garcia*, 39 Cal. 4th 1070, 1077 (2006); *Schmidlin v. City of Palo Alto*, — Cal. Rptr. 3d —, 2007 WL 4239857, at *24 (Cal. Ct. App. 2007); *People v. Cooper*, 149 Cal. App. 4th 500, 518 (2007). As will be seen, the very first element is missing in this case, and recent development in the law calls into question the second.

The two cases primarily relied upon by the defendant in support of collateral estoppel are *McCutchen v. City of Montclair*, 73 Cal. App. 4th 1138 (1999) and *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994). In *McCutchen*, a California appellate court held, as a matter of first impression under California law, that a magistrate's ruling at a preliminary hearing that there was sufficient evidence to hold the defendant for trial collaterally estopped a later claim in a civil suit that the officers arrested him without probable cause. *McCutchen*, 73 Cal. App. 4th at 1145-46. Following the Ninth Circuit's decision in *Haupt v. Dillard*, the court held that "a prior judicial determination at a preliminary hearing that there was sufficient evidence to hold the plaintiff over for trial [in the prior criminal proceedings]

---

[2] State law provides the rule of decision here. *See Haupt v. Dillard*, 17 F.3d 285, 288 (9th Cir. 1994).

may, in some situations, preclude the plaintiff from relitigating the issue of probable cause to arrest in a subsequent civil suit. *Id*. at 1147. The *McCutchen* court noted that in California, "a preliminary hearing is an adversary judicial proceeding, designed to litigate the issue of probable cause to try the accused on criminal charges, in which the accused may cross-examine witnesses pertinent to the issue of probable cause to arrest . . . ." *Id*. at 1146-47. The court reasoned that:

> A finding of probable cause to hold the defendant over for trial is a final judgment on the merits for the purposes of collateral estoppel under the California law because the accused can (1) immediately appeal the determination by filing a motion to set aside the preliminary hearing (Pen. Code, § 995) and (2) obtain review of the decision on the motion to set aside the preliminary hearing by filing a writ of prohibition (Pen. Code, § 999a). Also, the issue of probable cause cannot be litigated further because it cannot be used as a defense at trial.

*Id*. at 1145-46.

In *Haupt v. Dillard*, 17 F.3d 285, 287 (9th Cir. 1994), the plaintiff was arrested for murder, but later acquitted by a jury. The plaintiff then filed a section 1983 claim, premised on the charge that his constitutional right to be free from unreasonable searches and seizures had been unlawfully transgressed. *Id*. Applying Nevada law of collateral estoppel, the court held that the determination of sufficiency of the evidence to hold the plaintiff over for trial on murder charges precluded relitigation of the issue of probable cause to arrest. *Id*. at 290. The Ninth Circuit concluded that the ruling at a preliminary hearing was a final judgment on the merits for the purposes of collateral estoppel because the determination was immediately appealable via a petition for a writ of habeas corpus and could not be litigated further. *Id*. at 288-89.

The holdings of *McCutchen* and *Haupt* do not apply here. In those cases, rulings at a preliminary hearing of the existence of sufficient evidence to hold a defendant for trial collaterally estopped later civil claims of insufficient probable cause to arrest. The issue decided at Todd's preliminary hearing was the existence of probable cause to hold Todd for trial on two battery charges. Todd makes no claim that there was insufficient probable cause to arrest him; his claim is that Garcia used excessive force, an issue distinct from Todd's battery.

18

A finding of probable cause that Todd committed battery is not necessary identical to the issue of whether Garcia used excessive force. First, the plaintiff correctly points out that it is not clear what the factual basis of the probable cause finding was. A review of the preliminary hearing transcript suggests, but does not conclusively establish, that the factual findings were that Todd committed battery on Garcia by scratching or puncturing Garcia's wrist with his fingernails and that Todd committed battery on Chavez by striking him in the groin area. *See* Docket No. 158, Ex. G, at 28. Assuming that these were the factual findings supporting probable cause to hold Todd for trial on battery charges, this is not the same issue as whether Garcia used excessive force before the battery by applying extreme pressure to Todd's wrists in attempting to handcuff him, or using excessive force after the battery by beating Todd as he lay unconscious. The first of the five criteria for applying collateral estoppel under California law, having identical issues, is not satisfied.

Moreover, the continuing soundness of the *McCutchen* court's reasoning has recently been called into question by another California appellate court. In *Schmidlin v. City of Palo Alto*, — Cal. Rptr. 3d. —, 2007 WL 4239857, at *24 (Cal. Ct. App. 2007), the court "question[ed] the soundness of the narrow holding of *McCutchen* because we do not believe a preliminary hearing either raises the issue of, or provides an adequate opportunity to litigate, the legality of an arrest." Disputing the premises of both the *Haupt* and *McCutchen* courts, the *Schmidlin* court found that the "issue of 'probable cause' to arrest (or sufficient cause to detain) is simply not the same as—let alone identical to—that of sufficient cause to hold the defendant for trial." *Id.* at *25. The *Schmidlin* court noted that magistrates presiding over preliminary hearings have limited authority. *Id.* "It follows that a magistrate's finding of probable cause to hold a defendant for trial is not a finding of probable cause to arrest (or detain), and that even if it were, the magistrate's limited factfinding powers do not permit the defendant to 'actually litigate' the issue so as to give the magistrate's ruling preclusive effect in a later civil suit." *Id.* Todd's opportunity to "actually litigate" the battery charges at his preliminary hearing, which is necessary to the second requirement for applying collateral estoppel, is therefore somewhat suspect under the reasoning of *Schmidlin*. The application of collateral estoppel, accordingly, is not warranted.

### 3. *Scott v. Harris* **and the "Blatant Contradiction of the Record"**

Defendant Garcia's next basis for summary judgment is his reliance on *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007), for the proposition that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Garcia contends that the summary judgment record developed thus far so blatantly contradicts Todd's version of events that no reasonable jury could believe it. "Specifically, the objective medical evidence belies the testimony of Plaintiff's inmate witnesses that he was beaten while unconscious, by officers who used fists, kicks, and batons on his body. The objective medical records reflect that there was no evidence of bruises, cuts, lacerations, or other injuries consistent with such physical abuse." Docket No. 178, at 10.

In *Scott*, the Supreme Court considered the appeal of a motorist who led police on a high-speed vehicle chase. *Id.* at 1772-73. Police officer Timothy Scott joined the pursuit of the motorist, and, after receiving permission to employ a "Precision Intervention Technique" maneuver, used his bumper to attempt to bring the motorist to a stop. *See id.* at 1773. The motorist lost control of his vehicle, went down an embankment, overturned, and crashed. *Id.* The motorist was badly injured and was rendered a quadriplegic. *Id.* The motorist filed suit against Scott under 42 U.S.C. § 1983, alleging use of excessive force in violation of the Fourth Amendment. *Id.* The district court denied Scott's motion for summary judgment based on qualified immunity. *Id.* The Court of Appeals also concluded that Scott was not entitled to qualified immunity. *Id.* at 1774.

The Supreme Court noted that at the summary judgment stage the facts are generally viewed in the light most favorable to the non-moving party, which, in qualified immunity cases, "usually means adopting . . . the plaintiff's version of the facts." *Id.* at 1775. In *Scott*, however, the Court was presented with "an added wrinkle," the "existence in the record of [an uncontested] videotape capturing the events in question." *Id.* The Court found that the motorist's "version of events [was] so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have

relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."
*Id*. at 1776.

Here, nothing remotely akin to a videotape or other form of uncontested and incontrovertible evidence of the incident exists, making it inappropriate to view the evidence in a light other than that most favorable to Todd as the non-movant. And the defendant's claim of a lack of objective medical records reflecting bruises, cuts, or lacerations overlooks the "Emergency Care Flow Sheet" filled out after Todd was taken to the hospital. This recorded evidence of trauma to Todd's neck and back. *See* Docket No. 157, Ex. E.

The Court has also previously rejected Garcia's argument that the medical evidence "do[es] not corroborate" the other inmates' testimony that Todd "was beaten by officers while he was unconscious." Docket No. 57, at 14. And Garcia has previously argued that he is entitled to summary judgment on the basis that Todd's injuries were "only minor." As the Court explained in the denying the earlier summary judgment motion:

> While the extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment inquiry. Id. [citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)]. Whether the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation is contextual and responsive to contemporary standards of decency. Id. at 8 (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)) Such standards are always violated when prison officials maliciously and sadistically use force to cause harm, whether or not significant injury is evident. Id.; see also Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (no lasting injury required for sexual assault because sexual assault was deeply offensive to human dignity); Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991) (it is not degree of injury which makes out violation of Eighth Amendment but use of official force or authority that is intentional, unjustified, brutal and offensive to human dignity).
>
> . . . .
>
> [Todd]'s resulting injuries, however 'minor' they are alleged to be, do not entitle Defendant Garcia to judgment as a matter of law. As noted above, the use of physical force applied here, according to [Todd], was more than de minimis and therefore is sufficient under the Eighth Amendment standard.

Docket No. 57, 12-14.

In order to find that the summary judgment record "blatantly contradicts" Todd's version of

events, the Court would have to disregard the deposition testimony and/or declarations of six eyewitnesses, the medical report, and the finding of Salinas Valley prison officials that Garcia committed misconduct. The Court declines the invitation to do so, as there is nothing comparable to the videotape in *Scott* that makes disregarding Todd's version of events appropriate at the summary judgment stage.

### 4. Qualified Immunity

Garcia's final basis for summary judgment is that he is entitled to immunity from suit as "Todd's allegations fail to show an Eighth Amendment violation because Officer Garcia did not use force beyond what was necessary to subdue a resistive and combative inmate." Docket No. 156, at 23. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Under this doctrine, public officials sued in their individual capacities under section 1983 are shielded from suit unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person should have known. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

Garcia previously asserted in his prior motion for summary judgment that he is entitled to qualified immunity. Nothing has changed since the Court rejected this claim that alters the Court's prior analysis. In fact, there is now greater summary judgment evidence supporting Todd's claims. The analysis of the prior order therefore still stands:

> Defendant Garcia contends that he is entitled to qualified immunity because (1) Plaintiff has failed show that a constitutional right was violated by Defendant Garcia, and (2) it would not have been clear to a reasonable official that his conduct was unlawful in the situation confronted.
>
> The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "Therefore, regardless of

whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." Wilson v. Layne, 526 U. S. 603 (1999); Conn v. Gabbert, 526 U.S. 286, 290 (1999). The threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier, 533 U.S. at 201; see Martin v. City of Oceanside, 360 F.3d 1078, 1082 (9th Cir. 2004) (in performing the initial inquiry, court is obligated to accept plaintiff's facts as alleged, but not necessarily his application of law to the facts; the issue is not whether a claim is stated for a violation of plaintiff's constitutional rights, but rather whether the defendants actually violated a constitutional right) (emphasis in original); id. at 1081-82.

In the excessive force context, the first step is an inquiry into the objective reasonableness of the officer's belief in the necessity of his actions; the second step is an inquiry into the objective reasonableness of the officer's belief in the legality of his actions. Wilkins v. City of Oakland, 350 F.3d 949, 954-55 (9th Cir. 2003). This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. Qualified immunity also shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.

If believed by a trier of fact, Plaintiff's account of the incident establishes that Plaintiff's Eighth Amendment rights were violated when Defendant Garcia used force on him while he was complying with orders and later, while he was unconscious. According to the United States Supreme Court's disposition in Hudson, it was clearly established at the time of this incident that this type of conduct is unlawful. 503 U.S. at 4-5. In Hudson, the plaintiff argued with a prison guard and as a result, the guard placed the plaintiff in handcuffs and walked him toward the penitentiary's administrative lockdown area. Id. at 4. The plaintiff testified that on the way, the guard punched him in the mouth, eyes, chest and stomach while another guard held him in place then kicked and punched him from behind. Id. The altercation loosened the plaintiff's teeth and cracked his partial dental plate. Id. He suffered minor bruises and swelling of his face, mouth and lip. Id. The Supreme Court upheld the appellate court's finding that the guards' use of force was objectively unreasonable because no force was required. Id. at 5. Moreover, their conduct qualified as clearly excessive and occasioned unnecessary and wanton infliction of pain. Id.

Taking the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff has alleged a deprivation of a clearly established constitutional right to be free of excessive force. See Wall, 364 F.3d at 1112. If Defendant Garcia applied extreme pressure to Plaintiff's wrists while attempting to handcuff him, shoved his head on the wall, and hit him while he was unconscious, the force used by Defendant Garcia was excessive. Hudson demonstrates that the standard for excessive force was clearly established. Accordingly, Defendant Garcia was, or should have been, on notice of the excessive force standard.

23

If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his conduct was lawful. Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993). The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992). The defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights. Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995); Maraziti, 953 F.2d at 523.

Because Plaintiff has alleged the deprivation of an actual and clearly-established constitutional right, Defendant Garcia must show that a reasonable officer could have believed that his conduct was lawful. This is a mixed question of law and fact: "It involves an objective test of whether a reasonable official could have believed that [his] conduct was lawful in light of what [he] knew and the action [he] took." Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995).

Taking Plaintiff's set of facts as true, a reasonable officer in Defendant Garcia's position could not have believed that taking Plaintiff out of his cell, applying extreme pressure to his wrists while attempting to handcuff him, shoving his head on the wall, and hitting him while he was unconscious without physical provocation from Plaintiff, was reasonable. Because a reasonable officer could not have believed the action taken was lawful based on Plaintiff's version of the relevant events, Defendant Garcia cannot establish his entitlement to summary judgment based on qualified immunity.

The Court further finds that, insofar as the parties' version of the underlying historical facts are disputed, genuine issues of material fact exist which preclude a finding that Defendant Garcia's conduct was objectively reasonable. For example, using the same facts outlined above, a determination of the reasonableness of Defendant Garcia's conduct would vary depending upon whether the facts show that Plaintiff was displaying hostile behavior during the period of heightened security prior to the altercation, whether Plaintiff made any attempts at resistance while he was being handcuffed, whether Defendant Garcia subdued Plaintiff without causing him to become unconscious during the struggle, and whether Defendant Garcia continued to use force on Plaintiff after he became unconscious. [The following was included in a footnote: Defendants' motion and reply do not address Plaintiff's allegations that he was hit by Defendant Garcia while unconscious or the underlying reasons explaining why Plaintiff's claims of misconduct by Defendant Garcia were substantiated. Therefore, the Court cannot determine whether Defendant Garcia acted in good faith without knowing (1) the amount of force Defendant Garcia used while Plaintiff was unconscious and (2) why misconduct was substantiated against Defendant Garcia. Cf. Hammond v. Reyes, 2005 WL 2465931, *5 (E.D. Cal. 2005) (denying defendants' motion for summary judgment because it could not determine the amount of force that was used against plaintiff and whether or not the force used was in good faith because defendants' failed to address the extent of plaintiff's injuries).] Therefore, qualified immunity is denied as to Defendant Garcia in this action.

Docket No. 57.

**CONCLUSION**

24

Accordingly, defendant Rogelio C. Garcia's second motion for summary judgment/alternative motion for partial summary judgment [Docket No. 156] is DENIED.

IT IS SO ORDERED.

January 14, 2008

Saundra Brown Armstrong
United States District Judge