JUDITH Z. GOLD (State Bar No. 97098)
WILLIAM J. HAPIUK (State Bar No. 220574)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268
E-mail:    judith.gold@hellerehrman.com
               bill.hapiuk@hellerehrman.com

Attorneys for Plaintiff
MICHAEL A. TODD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MICHAEL A. TODD,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>A. LAMARQUE, *et al.*,<br><br>　　　　　　　　　　Defendant. | Case No.: C 03-3995 SBA (BZ)<br><br>**PLAINTIFF MICHAEL A. TODD'S MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY BY DEFENSE EXPERT TRISTAN IN ITS ENTIRETY, AND TO EXCLUDE PORTIONS OF DR. GOLDYNE'S PROPOSED TESTIMONY, ON THE GROUND THAT SUCH TESTIMONY IMPERMISSIBLY RESTS UPON DETERMINATIONS CONCERNING THE CREDIBILITY OF PLAINTIFF'S WITNESSES**<br><br>Pretrial Conference: Feb. 5, 2008<br>Time:   1:00 p.m.<br>Trial Date: Feb. 11, 2008<br>Time:   8:30 a.m.<br>Courtroom:   3<br>Judge:  Hon. Saundra Brown Armstrong |

Heller Ehrman LLP

PLAINTIFF MICHAEL A. TODD'S MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY BY DEFENSE EXPERT TRISTAN IN ITS ENTIRETY, AND TO EXCLUDE PORTIONS OF DR. GOLDYNE'S PROPOSED TESTIMONY, ON THE GROUND THAT SUCH TESTIMONY IMPERMISSIBLY RESTS UPON DETERMINATIONS CONCERNING THE CREDIBILITY OF PLAINTIFF'S WITNESSES
C 03-3995 SBA (BZ)

## I. INTRODUCTION

This motion in limine addresses the testimony of David Tristan, whom defendant has designated to testify as an expert on reasonable and unreasonable uses of force in prison settings. The motion also addresses aspects of the testimony of Dr. Adam Goldyne, defendant's psychiatric expert. Each of these experts' opinions rests substantially – and impermissibly – upon their conclusions about who is credible and who is not.

Considerable portions of both Mr. Tristan's and Dr. Goldyne's reports and deposition testimony are based upon assumptions and expressly stated conclusions that defendant Garcia and his witnesses are telling the truth while plaintiff, and the witnesses who support his case, are lying. Under Federal Rule of Evidence 702, however, it is the exclusive province of the jury to make determinations regarding credibility. There is no "science" of credibility (perhaps other than that based on lie detector tests, which are generally inadmissible), and it is inappropriate to allow an expert to pretend to be a human lie detector.

To allow defendants' experts to put the imprimatur of "expertise" on their credibility assessments would be extremely prejudicial. Neither Tristan nor Goldyne should be permitted to opine about any witness's credibility, and to the extent that any of their opinions rely upon such credibility determinations, they should also be excluded.

## II. DISCUSSION

Federal Rule of Evidence 702 permits an expert witness to offer opinion testimony where the expert's specialized knowledge would help the jury understand the evidence or decide a fact in issue. It is settled law that an expert witness may not comment on the credibility of another trial witness or offer an opinion as to whether that testimony is truthful. *U.S. v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973) ("Credibility . . . is for the jury -- the jury is the lie detector in the courtroom"); *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1981) (holding that "determining the weight and credibility of [a witness's] testimony. . . . belongs to the jury"); Fed. R. Evid. 702, comments (noting that "of course, if the expert

1

PLAINTIFF MICHAEL A. TODD'S MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY BY DEFENSE EXPERT TRISTAN IN ITS ENTIRETY, AND TO EXCLUDE PORTIONS OF DR. GOLDYNE'S PROPOSED TESTIMONY, ON THE GROUND THAT SUCH TESTIMONY IMPERMISSIBLY RESTS UPON DETERMINATIONS CONCERNING THE CREDIBILITY OF PLAINTIFF'S WITNESSES
C 03-3995 SBA (BZ)

does intrude on areas left for the jury -- such as the credibility of a witness -- the trial judge should exclude the testimony as unhelpful"). *See also Nimely v. City of N.Y.*, 414 F.3d 381, 398 (2nd Cir. 2005) (in a civil action based on excessive force, it was reversible error to allow expert testimony on why police officers have no incentive to lie); *U.S. v. Whitted*, 11 F.3d 782, 785-786 (8th Cir. 1993) (expert could not "pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility").

An expert witness is not only precluded from opining directly on credibility, but is also precluded from offering an opinion that is *based on* his assessment of the truthfulness of a witness whose credibility is in dispute. *Gausvik v. Perez*, 239 F. Supp. 2d 1067, 1093 (E.D. Wash. 2002) (credibility "is for a trier of fact to determine"); *U.S. v. Scop* 846 F.2d 135, 142 (2nd Cir. 1988) ("expert witnesses may not offer opinions on relevant events based on their personal assessment of the credibility of another witness's testimony").

### A.    Mr. Tristan's Proposed Testimony Would Violate These Principles

Mr. Tristan's expert testimony is in direct conflict with these well-settled principles. Defendant will tender Mr. Tristan as an expert in the proper and improper use of force, and of course the bottom line of his opinion is that defendant Garcia did not use excessive force in the incident at issue. That opinion, however, rests upon his conclusion *as to what actually happened*, a conclusion that obviously is based on nothing scientific, such as accident reconstruction by an engineer, but purely upon whom Mr. Tristan thinks is credible – indeed, Mr. Tristan has no firsthand knowledge of the January 29, 2002 incident. The descriptions of the incident by Mr. Todd and other witnesses are markedly different from those of defendant Garcia and his witnesses. Hence, Mr. Tristan first opines that testimony consistent with the guards' story is credible, and conflicting evidence is not. *See* Hapiuk Dec., Exh. G at 193:1-12.[1]   In his deposition and expert report, Mr. Tristan repeatedly

---

[1] Plaintiff's exhibits, which are all attached to the Declaration of William J. Hapiuk ("Hapiuk Dec."), filed herewith, bear letters A through V and are referred to hereafter in plaintiff's motion in limine papers by their letters.

Heller Ehrman LLP

2
PLAINTIFF MICHAEL A. TODD'S MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY BY DEFENSE EXPERT TRISTAN IN ITS ENTIRETY, AND TO EXCLUDE PORTIONS OF DR. GOLDYNE'S PROPOSED TESTIMONY, ON THE GROUND THAT SUCH TESTIMONY IMPERMISSIBLY RESTS UPON DETERMINATIONS CONCERNING THE CREDIBILITY OF PLAINTIFF'S WITNESSES
C 03-3995 SBA (BZ)

opines on plaintiff's and other witnesses' credibility. He makes such statements as, "those allegations by Mr. Taylor . . . are not credible." *See, e.g., id.* at 189:23-25. He repeatedly compares the credibility of various witnesses whose testimony is helpful to the plaintiff unfavorably with the defendant's witnesses. *See, e.g.*, *id.* at 194:25 – 195:1-2. Such "opinions," which are no more reliable than those a layperson might reach, permeate his deposition.

Mr. Tristan's report is similarly permeated with findings resting on a series of hand-picked facts that support the guards' testimony or, on occasion, inmate testimony where it is consistent with the guards' stories. He simply rejects, as not credible, evidence that does not support his conclusion. *See, e.g.*, Tristan Report (Hapiuk Dec., Exh. H at 8) (describing as "highly questionable" the credibility of two of plaintiff witnesses while suggesting that another, whose opinion mirrored that of the defendant, was "consistent"). Thus, Tristan's opinion boils down to the assertion that the jury should accept all of defendant Garcia's allegations about what happened as true, and that if they are true, then Garcia did not use excessive force. *Compare* Expert Report by Edward Caden (Hapiuk Dec., Exh. I at p 2-3). In contrast, plaintiff's expert Edward Caden carefully avoids opining about who is telling the truth. Instead, Mr. Caden opines, based upon the facts not in dispute, and accepts as true the disputed facts advanced *by defendant,* that defendant Garcia did not behave reasonably during the January 29, 2002 incident.

Mr. Tristan's entire report and all of his central conclusions impermissibly rest upon his credibility assessments and should be stricken. At the most, Mr. Tristan might be permitted to testify that *if* defendant Garcia's version of the events is true, then defendant did not use unreasonable force. If so, however, both he and defendant's counsel should be admonished to carefully avoid any testimony amounting to an opinion that defendant's version is true or that any witness is more credible than another. In addition, to prevent any possibility of prejudice, the jury should be instructed, both at the time of Mr. Tristan's testimony and in the concluding instructions, that (1) Mr. Tristan is not offering any opinion as to who is telling the truth, which is for the jury to decide, (2) his opinion is based purely

Heller Ehrman LLP

3

on the facts described by defendant and supportive witnesses, and (3) if the jury finds these facts not to be true, it must disregard Tristan's opinion as irrelevant.

### B. Dr. Goldyne Has Also Impermissibly Opined About Mr. Todd's Credibility

Dr. Goldyne, the defendant's psychiatric expert, could not find the time to examine Mr. Todd, or even meet him, before discovery closed.[2]  His report skirts the edge of the ethical obligations of his profession, which provide that a diagnosis made without benefit of a face-to-face examination is so inherently unreliable that it is unethical to offer one, even for forensic purposes, unless the doctor has made "earnest efforts" to examine the subject but has been unable to do so.  Hapiuk Dec., Exh. S.

Nevertheless, Dr. Goldyne purports to opine on Mr. Todd's credibility in two ways. First, he includes in his report an entire section in which he dissects Mr. Todd's medical reports going back years before the incident in question here, entitled "Has Mr. Todd Consistently Provided Accurate Accounts of His Mental and Physical Problems." *See* Hapiuk Dec., Exh. C at p. 2.  There, Goldyne hunts for and lists any purported inconsistencies in Mr. Todd's statements about his medical history over the years, as recorded by the various medical providers.  That exercise is one that anyone who can read could perform; Goldyne brings no medical expertise to it at all.  Defendant's obvious purpose is to depict Mr. Todd as untruthful on this basis, and have that depiction endorsed as a medical "opinion."

Second, Dr. Goldyne lays out Mr. Todd's entire history of criminal offenses (both felonies and misdemeanors) and disciplinary incidents while in prison, based upon which he opines that Mr. Todd suffers from "a personality NOS disorder with antisocial traits."  *Id.* at 16. Apart from the fact that it is improper for Goldyne, a purely rebuttal witness, to offer his own diagnosis (*see* plaintiff's Motion In Limine No. 4), here again defendant's purpose appears to be to smear Mr. Todd's character, offer an opinion about his honesty under the

---

[2] In plaintiff's Motion in Limine No. 4, we address other problems with Dr. Goldyne, in particular that his testimony has been limited, by prior Orders of this Court, to rebuttal, but almost nothing in his report or testimony is genuine rebuttal.

Heller Ehrman LLP

guise of medical diagnosis, and get information about Mr. Todd's past alleged misdeeds into the trial through the back door that should be excluded. (*See* plaintiff's Motions in Limine Nos. 1 and 2 re Mr. Todd's criminal and prison disciplinary history.)

Although Dr. Goldyne's attack on Mr. Todd's credibility is a bit more subtle than Tristan's, it is equally impermissible. Indeed, it directly contravenes the teaching of *U.S. v. Whitted*, 11 F.3d at 785-786, where the court rejected a similar attempt to cloak an attack on a party's credibility in the guise of medical "diagnosis." To the extent it is relevant at all, the jury can decide whether all of Mr. Todd's statements to his various doctors over the years have been consistent with one another. The jury can also decide whether, if not, this means anything at all about Mr. Todd's credibility in this case, or says more about his lack of education, his learning disabilities, and his other lifelong problems. As for Mr. Todd's criminal and disciplinary history, defendant should not be permitted to use the pretext of a medical "diagnosis" to bring this irrelevant, collateral, time-consuming and highly prejudicial information into the trial.[3]

## III.    CONCLUSION

For these reasons, Mr. Tristan and Dr. Goldyne should be precluded from testifying. At the minimum, to avoid intruding on the jury's function of assessing credibility of witnesses, their testimony should be limited in accord with the plaintiff's proposed Order.

DATED: January 22, 2008          Respectfully submitted,

HELLER EHRMAN LLP

By _____/s/_____
    JUDITH Z. GOLD
    Attorneys for Plaintiff
    MICHAEL A. TODD

---

[3] In addition, plaintiff's expert, Dr. Roberts, testified that he does not necessarily disagree with the diagnosis of "personality disorder NOS with antisocial traits," but that it is one that can exist concurrently with the diagnoses that he, Dr. Roberts, arrived at and does not change his conclusion at all. There is thus nothing about this aspect of Goldyne's anticipated testimony that constitutes "rebuttal" to any anticipated testimony by Dr. Roberts.

Heller Ehrman LLP

5
PLAINTIFF MICHAEL A. TODD'S MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY BY DEFENSE EXPERT TRISTAN IN ITS ENTIRETY, AND TO EXCLUDE PORTIONS OF DR. GOLDYNE'S PROPOSED TESTIMONY, ON THE GROUND THAT SUCH TESTIMONY IMPERMISSIBLY RESTS UPON DETERMINATIONS CONCERNING THE CREDIBILITY OF PLAINTIFF'S WITNESSES
C 03-3995 SBA (BZ)